

PARTNERS
Charles C. Foti, Jr., LA
Lewis S. Kahn, LA
Kim E. Miller, NY & CA
Albert M. Myers, NY & GA
Kevin L. Oufnac, LA & SC
Michael A. Swick, NY

OF COUNSEL
Neil Rothstein, PA

ASSOCIATES
Paul S. Balanon, LA, MD, & D.C.
Sarah Catherine Boone, MT
Melissa Ryan Clark, NY
Michael A. McGuane, NY
George S. Mentz, LA

Paul S. Balanon
Direct Tel: (504) 648-1843
paul.balanon@ksfcounsel.com

November 17, 2009

*Via Electronic Filing and*
*Courtesy Copy Via Overnight Courier*

The Honorable Nancy F. Atlas
c/o Shelia Ashabranner
United States Courthouse
515 Rusk Street, Room 9015
Houston, Texas 77002-2601

  Re: *In re Superior Offshore Int'l, Inc. Sec. Litig.*
     Civ. No. H-08-00687 (S.D. Tex.)

Dear Judge Atlas:

  We are Lead Counsel for Lead Plaintiffs ("Plaintiffs") in the above-referenced matter. We write in response to the Court's Order regarding the discovery issues outlined in Defendant Burks' November 13, 2009 request ("11/13/09 Letter"). The Court has scheduled a discovery conference for November 23, 2009 at 1:00 p.m. [Rec. Doc. No. 159]. This letter also addresses, as an initial matter, a separate issue that is ripe for resolution by the Court: Plaintiffs' request for an Order to require the Individual Defendants' to produce non-privileged documents listed on their privilege log.

*Plaintiffs' Request for Individual Defendants*
*To Produce Non-Privileged Documents*

  This issue is straightforward: does the common interest privilege apply to communications and documents generated before a mutual litigation agreement was executed? Plaintiffs aver that the answer to this question, based on Fifth Circuit precedent, is no.

  On October 14, 2009, the Individual Defendants emailed a privilege log, claiming the attorney-client privilege on approximately 1,357 documents. *See* Exhibit A. Plaintiffs noted that a substantial majority of these documents were created during the Individual Defendants' tenure with Superior Offshore Int'l., Inc. ("Superior"), which filed for bankruptcy in April 2008.

650 Poydras Street, Suite 2150 • New Orleans, LA 70130 • (504) 455-1400 — 12 East 41st Street, 12th Floor • New York, NY 10017 • (212) 696-3730
LA and NY fax: (504) 455-1498

Hon. Nancy F. Atlas
November 17, 2009
Page 2 of 5

Consequently, on October 27, 2009, Plaintiffs requested that the Individual Defendants (*former* officers and directors of Superior) produce all documents on the privilege log because they had no standing to assert Superior's privilege. *See* Exhibit B. Additionally, the privilege log failed to include basic information in order for Plaintiffs to properly assess their claims of privilege. For instance, such basic information as "to" and "from" was omitted. The attorney-client privilege is also claimed on documents *sui generis* just because they were attached/forwarded with the putatively privileged email; there is little or no detail provided regarding some of the attachments. Moreover, there is nothing to indicate that the Superior employees on which the Company's privilege is asserted are even part of any litigation control group or were charged with seeking or receiving legal advice for the Company.

It is clear that the burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege. *In re Santa Fe Int'l Corp*, 272 F.3d 705, 710 (5th Cir. 2001). Basic information for Plaintiffs to assess the claim of privilege is required, including: (a) the date of the document claimed to be privileged; (b) type of document and length; (c) author and the recipient of the document; (d) general subject matter of the document; (e) privilege asserted for each document; and (f) explanation as to why the privilege is applicable **with enough specificity** to allow plaintiff to determine whether to object to the privilege asserted. *PYR Energy Corp. v. Samson Res. Co.*, No. 05-530, 2007 U.S. Dist. LEXIS 8696, at *3 (E.D. Tex. Feb. 7, 2007); Fed. R. Civ. P. 26(b)(5).[1]

On November 9, 2009, in an attempt to salvage their privilege claims, the Individual Defendants sent a letter to Plaintiffs asserting that the "common interest" doctrine applies, thereby triggering the attorney-client privilege. *See* Exhibit C. Three days later, Plaintiffs responded by letter, stating that the purported "common interest" privilege was not asserted until August 2, 2008 (the date that Superior's bankruptcy counsel sent the letter to Individual Defendants regarding document sharing). *See* Exhibit D. No communications prior to this date are privileged because all documents on the privilege log pre-date August 2, 2008, the date of the letter agreement and, therefore, not subject to the common interest privilege.

Indeed, the Fifth Circuit has expressly held that the "common interest" doctrine only applies to those "communications" made during the time period of the existence of the common interest in the litigation. *See Santa Fe,* 272 F.3d at 711 (requiring a "palpable threat of litigation"). The Individual Defendants have failed to state on what "factual basis," *see id.,* at 711 fn 7, they could claim a common interest on pre-August 2, 2008 documents.

---

[1] *See also Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363, 2009 U.S. Dist. LEXIS 70264, at *5-*6 (M.D. La. (Aug. 11, 2009) ("[a] privilege log...should not only identify the date, the author, and all recipients of each document listed therein, but should also describe the document's subject matter, the purpose for its production, and a *specific explanation of why the document is privileged* or immune from discovery.") (emphasis added); *Mary Kay Inc. v. Weber*, No. 08- 0776, 2008 U.S. Dist. LEXIS 104494, at *4-*5 (N.D. Tex. Feb. 13, 2009); *Peacock v. Merrill*, No. 08-01, 2008 U.S. Dist. LEXIS 18337, at *12 (M.D. La. Mar. 10, 2008) (requiring a supplemental privilege log identifying "the date, the author, and all recipients of *each document* listed therein, but also describes the document's subject matter, *purpose for its production, and a specific explanation of why the document is privileged or immune from discovery.*") (emphasis added).

Hon. Nancy F. Atlas
November 17, 2009
Page 3 of 5

Undersigned counsel conferred with counsel for Defendants Schaefer and Koch on November 17, 2009, who indicated that they could not waive the privilege without authority from the debtor. *See*, Exhibit E (email from Plan Agent declining to waive the privilege but, despite this email, the fundamental question remains whether there is even an applicable "common interest" privilege to withhold communications and documents pre-dating the August 2, 2008 agreement).[2] Plaintiffs reasserted that the common interest doctrine had prospective, not retroactive, effect and could not possibly shield pre-agreement communications and documents. Individual Defendants indicated they would not produce the documents on the privilege log and thus this issue is ripe for consideration.

### *Defendant Burks' Interrogatory No. 5 for*
### *Plaintiffs to Identify Alleged Omissions*

Defendant Burks asks for Plaintiff to "identify each omission in the Registration Statement that forms the basis of their claims." 11/13/09 Letter at 1. Plaintiffs asserted on the parties' meet and confer call that the Complaint is replete with language clearly indicating when there is an allegation of an omission or a failure to disclose. Indeed, the Complaint uses the interchangeable phrases "omitted" or "failed to disclose." *See, for example*, Complaint at ¶¶26, 28, 30, 32. Plaintiff further noted that the Complaint does "speak for itself" and amply provides Defendant Burks with the requisite clarity to identify the specific omission allegations. *See* Plaintiffs' Supplemental and Amending Responses to Interrogatory No. 5 (Exhibit A to the 11/13/09 Letter).

Pursuant to the Court's November 16, 2009 Order for the parties to meet and confer again prior to the November 23, 2009 conference, the parties have discussed this issue further. Defendant Burks has provided Plaintiffs with a list of paragraphs he deems to include allegations related to omissions. Plaintiffs have agreed to review this list and supplement with paragraphs they believe are responsive to the Interrogatory by Friday, November 20, 2009.

### *Defendant Burks' Interrogatory Nos. 4 and 9 for*
### *Plaintiffs to Identify When the Truth Became Known*

Defendant Burks also asks Plaintiffs to "identify when the truth for each identified misstatement and omission was first revealed to the market." Plaintiffs asserted, however, that Defendant Burks is seeking to impermissibly shift to Plaintiffs his burden to prove a defense.

---

[2] Despite Defendants' position that the common interest privilege applies, there is no "common interest" between Superior (which is in bankruptcy and will cease to exist; the death of the corporation presupposes also the termination of any privilege) and the Individual Defendants. Indeed, the present action cannot proceed against Superior due to the bankruptcy stay. 11 U.S.C. § 362(a)(1). On this point, the Individual Defendants have failed to articulate why their "interest" with Superior is even "common." To the contrary, there is no question that their interests are actually antagonistic to each other; there are "adversary proceedings" in the Bankruptcy Court between Individual Defendants and Superior. Moreover, because the August 2, 2008 agreement was signed by the Porter & Hedges LLC firm, not Klafter Olsen & Lesser LLP, Individual Defendants have the additional burden to demonstrate that the latter (as counsel for the Post Confirmation Equity Sub-Committee of the Debtor) can even assert the Company's privilege. This, they have not done.

Hon. Nancy F. Atlas
November 17, 2009
Page 4 of 5

This is a case arising under Section 11 of the Securities Act of 1933. The burden to prove the affirmative defense that something other than the misleading registration statement or omission caused Plaintiffs' losses falls squarely on Defendant Burks. 15 U.S.C. § 77k(e) (Section 11(e) of the Securities Act of 1933); *Akerman v. Oryx Communs., Inc.*, 810 F.2d 336, 340 (2d Cir. 1987). This affirmative defense is also known as "negative causation" and Defendant Burks' burden is "heavy." *Id.* at 341; *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009).

Nevertheless, Defendant Burks wants Plaintiffs to pair each misstatement or omission with a specific revelation of truth apparently in order for Defendants to demonstrate lack of damages based on a "corrective disclosure" theory. 11/13/09 Letter at 1-2. In effect, Defendant Burks is asking Plaintiffs when a "corrective disclosure" occurred so that he can then disclaim pre-disclosure damages. Significantly, however, loss causation is *not* an element of a Section 11 claim and is *presumed* under the Securities Act of 1933. *Alaska Elec. Pension Fund*, 572 F.3d at 234 ("Once a plaintiff establishes a prima facie case under the Securities Act, loss causation is presumed.") (citation omitted).

The information Defendant Burks seeks is generally addressed through expert testimony, including an analysis of publicly-made releases. *See, for example, Ryan v. Flowserve Corp.*, 245 F.R.D. 560, 579-82 (N.D. Tex. 2007) (illustrating the types of information required to demonstrate lack of a corrective disclosure), *rev'd sub nom. Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009). "[I]n the cases where defendants have successfully established an 11(e) defense on summary judgment, they have not only submitted expert testimony, but have ***provided and discussed evidence attributing the decline to factors other than their own disclosure of financial results***." *Adair v. Kaye Kotts Assoc.*, No 97-civ-3375, 1998 U.S. Dist. LEXIS 3900, at *22 (S.D.N.Y. Mar. 27, 1998)) (emphasis added). In the event that Defendants intend to prove an 11(e) affirmative defense, to do so, the evidence that goes to that issue is properly the subject for a classic "battle of the experts," including analysis of events and market reactions, industry trends, and the like.

Notably, the *Ryan* case was reversed by the Fifth Circuit on the basis that the district court there had improperly shifted the "negative causation" burden at the class certification stage to plaintiffs. *Alaska Elec. Pension Fund*, 572 F.3d at 234 ("The July and September 2002 releases may not have had a corrective effect, ***but the defendants were required to prove*** that no reasonable juror could believe that ***any portion*** of [Plaintiff's] July and September 2002 losses was caused by the defendants' alleged misrepresentations in the registration statements, *i.e.*, the losses were caused by another factor.") (emphasis added).[3]

At bottom, Defendant Burks' request seeks to shift the plain burden of this affirmative defense to Plaintiffs and has no basis in law. Indeed, "[i]t is defendant's burden, not plaintiff's,

---

[3] Defendant Burks' citation to *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152, 2008 U.S. Dist. LEXIS 89598 (N.D. Tex. Nov. 4, 2008), is unhelpful to Burks. The case involved Section 10(b) of the Exchange Act where loss causation is a necessary element of the claim.

*to show when information first entered the marketplace.*" *Levine v. Atricure, Inc.*, 508 F. Supp. 2d 268, 274 (S.D.N.Y. 2007) (emphasis added); *In re Countrywide Fin. Cor. Sec. Litig.*, 588 F. Supp. 2d 1132, 1172 (C.D. Cal. 2008) (citing *Levine*); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994) (reversing a district court's grant of summary judgment to defendants because its analysis was based "upon the faulty premise that [the defendant's] alleged errors needed to be disclosed to the market before section 11 liability could attach"); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 869 (S.D. Tex. 2004) ("the mere fact that plaintiff's losses were incurred before the alleged misrepresentations became public [*i.e.*, Defendant Burks' contention] is not proof that the losses are attributable to something other than the misrepresentations in the registration statement.").

Pursuant to the Court's November 16, 2009 Order for the parties to meet and confer again prior to the November 23, 2009 conference, the parties have discussed this issue further and have been unable to reach any resolution.

### *Conclusion and Request for Relief*

Therefore, Plaintiffs request that the Court deny Defendant Burks' request for Plaintiffs' to supplement or further respond to the Interrogatory Nos. 4 and 9. In addition, because the issue is ripe for consideration, and in the interests of expedience and efficiency, Plaintiffs also respectfully request that the Court address the privilege log issue raised herein at the previously-scheduled November 23, 2009 conference, or soon thereafter at the Court's convenience.

Respectfully submitted,

Paul S. Balanon

cc: All Counsel, *via CM/ECF*