UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IN RE SUPERIOR OFFSHORE          )          CIVIL ACTION NO. H-08-687
INTERNATIONAL, INC.              )
SECURITIES LITIGATION            )          JUDGE NANCY F. ATLAS

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Paul R. Bessette                          Stephen B. Crain
Texas Bar No. 02263050                    Texas Bar No. 04994580
S.D. Bar No. 22453                        S.D. Bar No. 12499
Michael J. Biles                          Tony L. Visage
Texas Bar No. 24008578                    Texas Bar No. 00788587
S.D. Bar No. 23146                        S.D. Bar No. 17248
Yusuf Bajwa                               BRACEWELL & GIULIANI LLP
Texas Bar No. 24047754                    711 Louisiana Street, Ste. 2300
S.D. Bar No. 650026                       Houston, TX 77002
GREENBERG TRAURIG LLP                     Tel: 713-223-2300
300 West 6th Street, Suite 2050           Fax: 713-221-1212
Austin, TX 78701
Tel: 512.320.7200                         COUNSEL FOR DEFENDANTS
Fax: 512.320.7210                         LOUIS E. SCHAEFER, JR. AND
                                          R. JOSHUA KOCH, JR.
COUNSEL FOR DEFENDANTS
ROGER D. BURKS AND JAMES J.
MERMIS

Mark D. Manela
Texas Bar No. 12894500
S.D. Bar No. 1821
Jessica Crutcher
Texas Bar No. 24055367
S.D. Bar No. 675607
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002
Tel: 713-238-2645
Fax: 713-238-4645

COUNSEL FOR THE UNDERWRITER DEFENDANTS MERRILL LYNCH, PIERCE,
FENNER & SMITH INC. and J.P. MORGAN SECURITIES, INC.

Plaintiff's Reply Brief contains new arguments regarding putative class members' knowledge and his own deposition testimony. To respond to those new arguments, and to aid the Court's consideration of Plaintiff's motion for class certification, Defendants submit this sur-reply brief.

## I.     Plaintiff Concedes That Any Class Must End With The Trading Of Unregistered Shares, But Misidentifies The End Date.

Plaintiff now concedes (at 5) that any class period must end when shares not registered in Superior Offshore's IPO began to trade in the open market. Plaintiff incorrectly states, however, that any class should therefore end on October 25, 2007. In fact, because unregistered shares were publicly traded on October 25, 2007, purchasers who bought shares on that date cannot establish section 11's tracing requirement. October 24, 2007 is the proper end date of any potential class. *See* Defs' Resp. Br. 2 ("no putative class member who purchased Company stock *on or after* October 25, 2007 can satisfy section 11's strict tracing requirement").

## II.    Putative Class Members' Widespread Knowledge Precludes Certification

Plaintiff pays lip service to the Fifth Circuit's demanding standards for determining whether a class may be certified, but fails to grasp the import of those standards in this case. In deciding whether Plaintiff has satisfied his burden under Rule 23, this Court must "'go[] beyond the pleadings [to] understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005); *see also Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d

261, 268 (5th Cir. 2007). When that inquiry shows, as here, that elements of liability, affirmative defenses, and damages create individualized issues that would predominate over common ones at trial, a class may not be certified. *See Gene & Gene LLC v. Biopay LLC*, 541 F.3d 318, 327 (5th Cir. 2008) (distinction between element of cause of action and affirmative defense is "irrelevant to our analysis"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 303-08 (5th Cir. 2003); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996) ("action, as a whole, must satisfy the predominance requirement of (b)(3)").

Congress has expressly decided that a defendant is not liable under section 11 to any person who "at the time [he or she acquired the security] knew of [the registration statement's] untruth or omission." 15 U.S.C. § 77k(a); *IPO*, 471 F.3d at 43; *Martin v. Hull*, 92 F.2d 208, 210 (D.C. Cir. 1937). Plaintiff belittles that statutory provision as an "undefined … affirmative defense." Reply Br. 10. Some courts have held that lack of knowledge is an element of the claim rather than a defense. *See IPO*, 471 F.3d at 43 ("*Plaintiffs* must show lack of knowledge") (emphasis added). Regardless, in this Circuit the difference between an element and a defense is "irrelevant" to Rule 23 analysis. *Gene & Gene*, 541 F.3d at 327. Whether an element or a defense, each claimant's knowledge will be an issue that must be resolved at trial, requiring countless individualized mini-trials.

Plaintiff variously seeks to recharacterize our argument concerning each putative class member's knowledge of the alleged misstatements or omissions as one of materiality, reliance, negative-causation, or damages, claiming—contrary to plain

statutory language and precedent spanning 70 years—that "investors' knowledge is largely irrelevant in a Section 11 case." Reply Br. 2. Lack of knowledge is a free-standing requirement under section 11(a)'s unambiguous text, not to be conflated with any of the other elements Plaintiff cites, and would be a hotly disputed issue—wholly individualized—of a trial in this case.

Plaintiff alternatively contends that proof of knowledge must be common to the putative class because any knowledge among Superior Offshore's investors derived from reports from the Company, in the media, or analyst reports and was therefore widespread and public. Reply Br. 3-5, 10-16; *see id.* at 17 ("Public announcements … do not create individualized issues"). The Second Circuit rejected that very argument in *IPO*, the only circuit court decision that interprets section 11(a)'s knowledge provision in light of Rule 23(b)(3)'s requirements. In *IPO*, the Second Circuit vacated the district court's certification of a section 11 class because "widespread knowledge … would precipitate individual inquiries as to the knowledge of each member of the class." 471 F.3d at 44.

*IPO*'s reasoned holding is directly on point. Contrary to Plaintiff's contention, the critical fact in *IPO* was not that the sources of knowledge were non-public and evident "on the face of the complaint." Reply Br. 11. The basis of the Court's reversal of class certification was not solely plaintiffs' allegations, but also "*evidence, and discovery responses.*" *IPO*, 471 F.3d at 43 & n.13 (emphasis added). And the decision rested as much on sources of putative class members' knowledge that were "public"—including "two cable television networks, MSNBC and CNBC," "an SEC Staff Legal Bulletin," and "a report in *Barron's.*" 471 F.3d at 43. The Second Circuit's holding that claimants

with knowledge from either public or private sources were barred from bringing suit comports with Congress' instruction that anyone with knowledge of a registration statement's "untruth or omission," whatever the source, has no claim. 15 U.S.C. § 77k(a). In unusual cases such as this one, where Plaintiff alleges misstatements and omissions concerning facts that were the subject of multiple statements and articles available in the media and the internet, whether a particular claimant had disqualifying knowledge can only be determined by individual inquiry.

*In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774 (3d Cir. 2009), relied on by Plaintiff, is not to the contrary. That decision held only that a plaintiff need not show an "efficient market" to establish "materiality, loss causation, and injury" under section 11. *Id.* at 782-83. Plaintiff points to the word "knowledge" in the Third Circuit's opinion, but the context is a discussion not of the separate knowledge requirement—which was not argued or in issue in *Constar*—but of *reliance*. *See id.* at 784 ("Since reliance is irrelevant in a § 11 case, a § 11 case will never demand individualized proof as to an investor's reliance or knowledge"). Reliance is not required under section 11, but section 11(a) expressly bars claims by any person who knows of the registration statement's alleged "untruth or omission." 15 U.S.C. § 77k(a); *Martin*, 92 F.2d at 210. Plaintiff's interpretation of *Constar* takes no account of the statutory text or of the narrow issues actually before the Third Circuit, and implausibly assumes that the Third Circuit meant to create a circuit split with the Second Circuit in *IPO sub silentio*.[1]

---

[1] Plaintiff's other authorities are no more relevant. In *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2005), the court noted that defendants did not cite any case that limited a class period on account of public reports and it implied without explanation that an inquiry notice standard may govern section 11(a)'s

Plaintiff's contention that knowledge is an issue that may be resolved on a class-wide basis rests on Plaintiff's view, borrowed from unrelated issues concerning the trigger for the statute of limitations (*see* 15 U.S.C. § 77m), that *constructive* knowledge bars liability under section 11(a). Reply Br. 3, 15. Whether or not constructive knowledge may be sufficient to bar section 11 liability—provided that the requirements for establishing constructive knowledge are satisfied—there is no doubt that a claimant's *actual* knowledge of the truth is disqualifying, as Congress expressly provided. *See* 4 Bromberg & Lowenfels on Securities Fraud § 7:63 (2d ed. 2009) ("Actual knowledge seems to be called for"); 2 A.A. Sommer, Jr., Federal Securities Act of 1933 § 9.02[10] (2010) ("actual" knowledge bars section 11 claim); *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986) ("Those who purchased after July 28, 1983, certainly had access to substantial additional information. Their knowledge of the allegedly omitted information is a central issue to the inquiry in a section 11 or 12(2) claim").

---

knowledge provision. Judge Lake in *Dynegy* did not have the benefit of the Second Circuit's reasoned analysis in *IPO*. Nor did the defendants in *Dynegy* refer the court to *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986), which limited the class period due to news reports. And here, as in *IPO*, defendants rely on the actual rather than constructive knowledge of claimants, which is an individualized and not a class issue. In other cases cited by Plaintiff, knowledge was never contested. *E.g.*, *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 575 (E.D.N.Y. 1971) ("no evidence has been introduced" regarding knowledge); *In re Gap Stores Sec. Litig.*, 79 F.R.D. 283, 302 (N.D. Cal. 1978) (no indication knowledge was contested in an opinion certifying a *defendant* class).

Plaintiff's remaining cases focus entirely on *other* section 11 issues. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 234 (5th Cir. 2009) (loss causation); *APA Excelsior III L.P. v. Premier Techs. Inc.*, 476 F.3d 1261, 1274-75 (11th Cir. 2007) (reliance); *In re Metro. Sec. Litig.*, 2008 WL 5102303, at *3 (E.D. Wash. Nov. 25, 2008) (loss causation and damages); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 160 (S.D.N.Y. 2007) (negative causation, intra-class conflicts, and typicality); *Levine v. Atricure, Inc.*, 508 F. Supp. 2d 268, 274 (S.D.N.Y. 2007) (negative causation); *In re Reliant Sec. Litig.*, 2005 U.S. Dist. LEXIS 9716, at *24 (S.D. Tex. Feb. 18, 2005) (tracing and short sales); *see also Beach v. Healthways, Inc.*, 2010 WL 1408791, at *3 (M.D. Tenn. Apr. 2, 2010) (typicality for section 10(b) claim). They have no relevance here.

Accordingly, if a news report exposes a registration statement's "untruth or omission," a plaintiff who reads the report and then buys the company's security has no section 11 claim. Only individualized mini-trials can determine which claimants fit in that category, making class litigation in this case unmanageable and not superior to individual suits. *IPO*, 471 F.3d at 44.

The diversity of relevant knowledge among members of the putative class is far from hypothetical. Plaintiff's Complaint itself details two disclosures during the proposed class period that relate to the Prospectus's alleged untruths and omissions. CAC ¶¶ 108-11, 114. Discovery has further revealed that the Company's relevant announcements were far more extensive than is reflected in the Complaint. *See* Defs' Resp. Br. 17-25. Defendants also showed that individual putative class members followed those announcements and had relevant knowledge at the time of their purchases. *Id.* In light of this evidence, a jury certainly could find that many individual putative class members had knowledge of the Prospectus's alleged untruths and omissions at the time of their purchases.[2]

---

[2] Defendants need not address Plaintiff's latest re-interpretation of his Complaint. Reply Br. 18-22. The Court has only to read the cited paragraphs to see that Defendants fairly captured the Complaint's allegations. *See also* Defs' Resp. Br. 17-25; Pl. Reply Br. 20-21 (*again* claiming that the Company's "transformation" precipitated its bankruptcy).

We do note that Plaintiff does not accurately describe what discovery has revealed. For example, it was no secret that "the Company's vessel utilization rate for the shallow water Gulf of Mexico fleet had declined in the four months leading up to the IPO" (Reply Br. 18), because that information was disclosed in the Prospectus. Prospectus, Defs' Request for Judicial Notice (Docket #82), Ex. 1 at 7, 40 ("revenues for the first quarter of 2007 were adversely affected by a decrease in vessel revenue days … when compared to both the first and fourth quarters of 2006"; "vessel revenue days also suffered from lower utilization of our four-point vessels, which resulted from winter weather conditions in the U.S. Gulf of Mexico that historically affect vessel utilization in the first quarter of each year"). Plaintiff also makes irrelevant and inaccurate aspersions in suggesting that Mermis's alleged comments on a planned internal presentation were somehow inappropriate. Reply Br. 19-20. Jimenez testified that he never changed any numbers based on conversations with Mermis. *See* C. Jimenez Dep. at 81:17-20 (attached as Exhibit A). Plaintiff also completely misstates any budgetary problems with the *Endeavour. See* Reply Br. 22. The

Any trial on the merits that is consistent with Defendants' due process rights cannot avoid individualized mini-trials on the knowledge of the estimated thousands of putative class members. These include financial institutions whose numerous employees follow financial data pertaining to companies held in investment portfolios, who undoubtedly possess knowledge of publicized data that would preclude suit. *IPO*, 471 F.3d at 43-44; *see Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 613 (1997) ("Rule 23's requirements must be interpreted in keeping with … the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right'"); FED. R. CIV. P. 23 advisory committee notes, 2003 amendments ("A critical need is to determine how the case will be tried"). As a result, Plaintiff cannot establish predominance or superiority and class certification should be denied. *IPO*, 471 F.3d at 43-44.

## III.    Ognar's Inadequacy Precludes Certification

Plaintiff also misapprehends the Fifth Circuit law on Rule 23(a)'s adequacy requirement and its relation to the PSLRA. As the Fifth Circuit has recognized, Congress "emphatic[ally] command[s] that competent plaintiffs, rather than lawyers, direct [securities] cases." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 484 (5th Cir. 2001) ("*Berger I*"); *see id.* at 483 (PSLRA requires "active, able class representatives" to "demonstrate they are directing the litigation"). The Fifth Circuit also requires class representatives to be "'willing[] and ab[le] … to take an active role in and *control* the

---

*Endeavour* was drydocked and refurbished on two separate occasions with two separate budgets. The first drydock occurred in August 2006 and was $274,000 *under* budget. Reply Br., Ex. J at 2. The second drydock began in February 2007 and unexpectedly lasted until September 2007. *Id.* It is logically impossible for the Company to be $4.2 million over budget by December 31, 2006, on a refurbishment project that began on February 2007.

litigation.'" *Id.* at 479 (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)) (emphasis added); *accord Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313-14 (5th Cir. 2002) ("*Berger II*") (*Berger I* reaffirmed the Fifth Circuit's "long-established standards for rule 23 adequacy of class representatives").[3]

This Court correctly interpreted and applied the Fifth Circuit's long-established standards in *Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298 (S.D. Tex. 2000). There, the Court noted that the proposed representatives did not "participate in litigation decisions" or "receive regular cost/expense information" and that the representatives learned of "activity in the case when they [were] copied on matters already completed." *Id.* at 302. The Court also highlighted that the testimony of a proposed class representative was "contrary to the position" of other putative class members. *Id.* In light of those facts, the Court found the proposed class representatives inadequate and denied class certification.

Under *Berger I*, *Berger II*, and *Griffin*, it is clear that Charles Ognar—the only remaining proposed class representative—is inadequate. To begin with, Ognar's understanding of Superior's Prospectus is "contrary to the position" taken in key portions of the Complaint. *Griffin*, 196 F.R.D. at 302; *see* Defs' Resp. Br. 36. Plaintiff tries to explain away those contradictions by writing that "Defense counsel engaged in a lengthy series of exchanges" with Ognar at his deposition, during which at *other* times Ognar stated that Defense counsel took *other* statements in the Prospectus out of context. Reply

---

[3] *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966), cited by Plaintiff, is not relevant. That case "did not address the adequacy requirement, but concerned only the verification of a complaint." *Berger I*, 257 F.3d at 482.

Br. 31. But Defense counsel certainly was entitled to inquire whether Ognar's views comported with those expressed in Plaintiff's 57-page Complaint. More importantly, Ognar swore an oath to testify truthfully and was able to review and change his deposition answers, which he did not. *See* FED. R. CIV. P. 30(e)(1). Ognar's testimony, which is contrary to the Complaint's allegations, shows that he cannot adequately represent the proposed class. *See Griffin*, 196 F.R.D. at 302.[4]

Ognar also has not sufficiently "oversee[n] his counsel" (Reply Br. 36), let alone "direct[ed]" or "control[led]" them. *Berger I*, 257 F.3d at 479, 484. As Defendants have shown, Ognar chose his counsel only because they were based in New Orleans, a city with little connection to this suit. Defs' Resp. 38. Ognar has no idea which other firms are representing him or whether he has spoken with lawyers from those firms. *Id.* Nor has Ognar "receive[d] monthly statements from counsel regarding billings [or] expenses." *Griffin*, 196 F.R.D. at 302; *see* Defs' Resp. 38. Finally, it appears that Ognar does not receive regular updates as to "the progress of the case." *Griffin*, 196 F.R.D. at 302. Indeed, he did not know whether other depositions had occurred, did not know whether (or understand why) Superior's outside directors were dismissed from the suit, and did not know that other co-plaintiffs existed until just recently. *See* Defs' Resp. 38. Ognar is in no meaningful sense "direct[ing]" or "control[ling]" his attorneys or this litigation. *Berger I*, 257 F.3d at 479, 484. Ognar therefore is inadequate under Fifth Circuit law and this Court's decisions. *Berger I*, 257 F.3d at 484; *Berger II*, 279 F.3d at 313-14; *Griffin*,

---

[4] Defendants previously submitted a DVD copy of Ognar's deposition for the Court to observe Ognar's bizarre and belligerent responses. *See* Defs' Resp. 3 n.6. A review of the DVD will also firmly rebut Plaintiff's insinuations that Defense counsel acted inappropriately.

196 F.R.D. at 302; *accord Umsted v. Intelect Commc'ns, Inc.*, 2003 WL 79750, at *2 (N.D. Tex. Jan. 7, 2003) (listing many of the same factors when finding proposed class representative inadequate).

*       *       *

For the foregoing reasons and for the reasons given in Defendants' Response Brief, Plaintiff's motion for class certification should be denied.

Respectfully submitted,

*/s/ Mark D. Manela*
Mark D. Manela
Texas Bar No. 12894500
S.D. Bar No. 1821
Jessica L. Crutcher
Texas Bar No. 24055367
S.D. Bar No. 675607
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002
Tel: 713-238-2645
Fax: 713-238-4645

COUNSEL FOR THE UNDERWRITER
DEFENDANTS
MERRILL LYNCH, PIERCE,
FENNER & SMITH INC. and
J.P. MORGAN SECURITIES, INC.

Paul R. Bessette
Texas Bar No. 02263050
S.D. Bar No. 22453
Michael J. Biles
Texas Bar No. 24008578
S.D. Bar No. 23146
Yusuf Bajwa
Texas Bar No. 24047754
S.D. Bar No. 650026

GREENBERG TRAURIG LLP
300 West 6th Street, Suite 2050
Austin, TX 78701
Tel: 512.320.7200
Fax: 512.320.7210

COUNSEL FOR DEFENDANTS
ROGER D. BURKS AND JAMES J. MERMIS

Stephen B. Crain
Texas Bar No. 04994580
S.D. Bar No. 12499
Tony L. Visage
Texas Bar No. 00788587
S.D. Bar No. 17248
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Ste. 2300
Houston, TX 77002
Tel: 713-223-2300
Fax: 713-221-1212

COUNSEL FOR DEFENDANTS
LOUIS E. SCHAEFER, JR. AND
R. JOSHUA KOCH, JR.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5, 2010, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who have consented to electronic notification. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to all non-CM/ECF participants.

*/s/ Jessica Crutcher*