## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE SUPERIOR OFFSHORE INTERNATIONAL, INC. SECURITIES LITIGATION | § § § | CIVIL ACTION NO. H-08-0687 |

## **MEMORANDUM AND ORDER**

This securities case is before the Court on Plaintiffs' Motion for Class Certification ("Motion") [Doc. # 172], to which Defendants filed an Opposition [Doc. # 182], Plaintiffs filed a Reply [Doc. # 189], and Defendants filed a Sur-Reply [Doc. # 190].[1] Having reviewed the full record in this case and having applied relevant legal authorities, the Court **denies** the Motion.

## I. BACKGROUND

Defendant Superior Offshore International, Inc. ("Superior") was a company that provided subsea construction and commercial diving services to the crude oil and natural gas industry in the Gulf of Mexico. The Individual Defendants were Superior's officers and directors.

---

[1] Also pending is Plaintiffs' Motion to Strike [Doc. # 191] seeking to strike Defendants' Sur-Reply. The Court has considered the Sur-Reply only to the extent it addresses, with supporting legal authority, the assertion in Plaintiffs' Reply that a Section 11 case will never require individualized proof of knowledge. Because these arguments are first presented in Plaintiffs' Reply, the Motion to Strike is **denied**.

In April 2007, Superior conducted an Initial Public Offering ("IPO") of approximately 10.2 million shares of its corporate stock. Defendants Merrill Lynch, Pierce, Fenner & Smith Inc. and J.P. Morgan Securities Inc. (collectively, the "Underwriter Defendants") are investment banking entities that acted as lead underwriters for the IPO. Plaintiffs purchased shares of Superior stock during the IPO. After the IPO, Superior suffered significant losses, and its stock began to lose value. By April 3, 2008, the stock price had fallen from the IPO price of $15.00 per share to a trading price of $1.08 per share. On April 24, 2008, Superior announced that it was ceasing operations and terminating all employees except those needed to wind down the corporation's affairs. That same day, Superior filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

Plaintiffs allege that Superior's Registration Statement and Prospectus (the "Registration Statement") contained information that was materially false or misleading. For example, Plaintiffs allege that the statements in the Registration Statement that demand for Superior's services were "currently" at a high level and that Superior anticipated that hurricane-related repair projects would "continue for the next several years" were inaccurate because Superior's hurricane-related and other work had already declined at the time of the IPO. *See* Complaint [Doc. # 71], ¶¶ 41-42. Plaintiffs also allege that the comment in the Registration Statement that Superior had

a "strong and loyal customer base" that included "most of the top 20 crude oil and natural gas producers . . ." was materially inaccurate because Superior actually had only two or three very small customers and a single large customer. *See id.*, ¶¶ 40, 47.

Plaintiffs allege also that the Registration Statement contained information that was misleading because material information was omitted. For example, Plaintiffs note that the Registration Statement touted prior experience of Mermis and Patrice Chemin (who became Superior's Chief Operating Officer in May 2007) with Torch Offshore, Inc. ("Torch"). *See* Complaint, ¶¶ 27, 29. Plaintiffs allege that the information was misleading because it omitted that Torch filed for bankruptcy protection during Mermis and Chemin's tenure with the company. *See id.*, ¶ 28. Plaintiffs allege also that the Registration Statement improperly failed to disclose that Superior planned to "transform" the company into servicing international and deepwater markets. *See* Complaint [Doc. # 71], ¶ 53.

Various investors filed lawsuits against Superior and the other Defendants. Plaintiffs allege that the Individual Defendants and the Underwriter Defendants violated Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k and § 77o ("Section 11").[2] Plaintiffs also allege that the Individual Defendants are control persons of

---

[2] Plaintiffs also allege that Superior violated Section 11, but all claims against Superior have been stayed as a result of Superior's Chapter 11 Bankruptcy proceeding currently pending in the United States Bankruptcy Court for the Southern District of
(continued...)

Superior and are liable under Section 15 of the Securities Act, 15 U.S.C. § 77t, for Superior's violation of Section 11.

Each of the individual cases was consolidated into this case. By Memorandum and Order [Doc. # 54] entered May 20, 2008, Charles Ognar was appointed lead plaintiff. The case is now before the Court on Plaintiffs' Motion for Class Certification. Plaintiffs originally requested certification of a class period from April 20, 2007 through April 25, 2008. Plaintiffs have now, however, acknowledged that the class period cannot extend beyond October 25, 2007, the date unregistered shares entered the market. *See* Reply [Doc. # 189], p. 5. The Motion has been fully briefed and is now ripe for decision.

## II.     RULE 23 CLASS CERTIFICATION

### A.     Rule 23(a)

Plaintiffs seeking class certification have the burden to establish each of the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation). *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997)).

---

[2]     (...continued)
        Texas, Case No. 08-32590.

Defendants do not challenge Plaintiffs' ability to satisfy the first three requirements of Rule 23(a).

*Numerosity* – It is generally assumed that the numerosity requirement is satisfied in cases involving nationally traded securities. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981). In this case, it appears that there are hundreds, if not thousands, of investors who acquired shares of Superior's stock, satisfying the numerosity requirement.

*Commonality* – The commonality requirement is satisfied where the resolution of at least one issue will affect all or a significant number of putative class members. *See Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). In this case, there are common questions of law and fact regarding whether the Registration Statement contained materially false and misleading statements. As a result, the commonality requirement is satisfied.

*Typicality* – The typicality requirement "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001)). In this case, the named Plaintiff, Charles Ognar, asserts claims under Section 11 based on allegedly

false representations in Superior's Registration Statement. These claims are typical of those that other putative class members would assert, satisfying this requirement.

*Adequacy* – The adequacy element of Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Analysis of this requirement focuses on the competence of class counsel and on the class representative's willingness and ability to serve without any conflicts of interest between the class representative and the putative class members. *See Langbecker v. Electronic Data Sys. Corp.*, 476 F.3d 299, 314 (5th Cir. 2007).

Securities class actions must be managed by "active, able class representatives who are informed and can demonstrate they are directing the litigation." *Feder v. Electronic Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). The putative class representative is not required to possess any "certain level of experience, expertise, wealth or intellect, or a level of knowledge and understanding of the issues, beyond that required by . . . long-established standards for rule 23 adequacy of class representatives." *Id.* (quoting *Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313-14 (5th Cir. 2002)). This "long-established standard" requires that the proposed class representative be willing and able "to take an active role in and control the litigation and to protect the interests of absentees." *Id.* (citations omitted).

Defendants do not challenge the competence of class counsel and do not allege that there are any conflicts of interest between proposed class representative Charles Ognar and the putative class members. Instead, Defendants argue that Ognar is not sufficiently able to serve as class representative. Specifically, Defendants assert that Ognar does not understand the claims in the lawsuit, that he cannot control his behavior, and that he is not adequately supervising the litigation.

The Court has read the transcript of and viewed Ognar's videotaped deposition. Many of Defendants' challenges to Ognar as class representative are based on statements in his deposition that are figurative in meaning and have been taken out of context. For example, Defendants assert that Ognar is a "self-described schizophrenic" based on Ognar's use of the term to describe his pattern of purchasing and selling stock, explaining that he would "waffle between hot and cold or bullishness and bearishness." *See* Ognar Deposition, Exh. 8 to Response, p. 207. Nothing in Ognar's testimony or any other part of this record supports Defendants' representation that Ognar is a "self-described schizophrenic" in any clinical, medical, or scientific sense.

Similarly, Defendants assert that Ognar "claimed that he would come to Houston and 'scratch' defense counsel." *See* Response, p. 37. The deposition transcript establishes, however, that Ognar did not threaten to scratch defense counsel,

but instead commented that defense counsel would scratch if put in a corner. *See* Ognar Deposition Transcript, Exh. 8 to Response, p. 149. Ognar also explained that his comment "I'll see you in Houston" meant that he would pursue this lawsuit all the way and would not be dissuaded by the perceived badgering by defense counsel. *See id.* at 179-80.

The deposition testimony reveals that Ognar worked as a retail stockbroker and municipal bond salesman registered with the major stock exchanges until his retirement in the 1980's. He alleges losses in excess of $750,000.00. He questioned counsel about their qualifications and experience in class action litigation before he retained them. He has spent at least 400 hours communicating with counsel (mostly over the telephone and via email) and overseeing their work in this case. He has read the relevant pleadings in the case, has discussed the case often with his attorneys, and understands the fundamental basis for and the core allegations in the lawsuit.

It seems clear that Ognar was frustrated during his deposition, and that his frustration at times caused him to give flippant answers to defense counsel's questions. Nonetheless, he seems to be rational, intelligent, and capable of understanding and guiding the litigation. He chose competent counsel, on whom he reasonably relies for their legal expertise and advice. He has been an active participant and has demonstrated that he is willing and able to represent a class if one

were certified.  Consequently, Plaintiffs have satisfied the adequacy requirement of Rule 23(a).

### B.     Rule 23(b)(3)

Having satisfied the requirements of Rule 23(a), Plaintiffs must also satisfy one of the requirements of Rule 23(b).  Plaintiffs in this case are seeking class certification pursuant to Rule 23(b)(3) and, therefore, must "demonstrate both 'that the questions of law or fact common to class members predominate over any questions affecting only individual members ["predominance"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["superiority"].'" *Id.* at 325-26 (quoting FED. R. CIV. P. 23(b)(3)).  "The district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Ditcharo v. United Parcel Serv., Inc.*, 2010 WL 1752159, *4 (5th Cir. Apr. 29, 2010) (citing *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007)).

When determining whether Plaintiffs have satisfied the predominance requirement, the Court considers "how a trial on the merits would be conducted if a class were certified." *Gene and Gene*, 541 F.3d at 326 (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003)).  This "entails identifying the substantive issues that will control the outcome, assessing which issues will

predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* Rule 23(b)(3)'s predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Id.* (citing *Amchem Prods.*, 521 U.S. at 623-24). It is well established in the Fifth Circuit that the "predominance of individual issues necessary to decide an affirmative defense may preclude class certification." *Id.* at 327 (citing *In re Monumental Life Ins. Co.,* 365 F.3d 408, 420 (5th Cir. 2004); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)); *see also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (noting that the "cause of action as a whole must satisfy Rule 23(b)(3)'s predominance requirement"); *Sandwich Chef of Texas, Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 220 (5th Cir. 2003) (reversing class certification because district court "did not adequately account for individual issues . . . that will be components of defendants' defense").

The elements of a Section 11 claim are: (1) an omission or misrepresentation; and (2) the omission or misrepresentation was of a material fact required to be stated or necessary to make other statements made not misleading. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1445 (5th Cir. 1993); *Truk Intern. Fund LP v. Wehlmann*, 2009 WL 4496225, *6 (N.D. Tex. Dec. 3, 2009). In this case, the existence of an

omission or misrepresentation and the materiality thereof are issues that are likely to be common to all putative class members.

A substantive issue that may control the outcome of the case, however, is whether any investor knew at the time he acquired his shares of Superior stock that the information in the Registration Statement was materially false or misleading. *See* 15 U.S.C. § 77k(a) (a defendant is not liable under Section 11 to any person who "at the time [he acquired the security] knew" of the alleged untruth or omission in the Registration Statement); *In re Initial Public Offerings Secs. Litig.*, 471 F.3d 24, 43-44 (2d Cir. 2006); *Martin v. Hull*, 92 F.2d 208, 210 (D.C. Cir. 1937); *In re Am. Intern. Group, Inc. Secs. Litig.*, 265 F.R.D. 157, 166 (S.D.N.Y. 2010) (citing *Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749, 755 (2d Cir. 1986); *In re Livent, Inc. Noteholders Secs. Litig.*, 151 F. Supp. 2d 371, 441 (S.D.N.Y. 2001)). Although the existence and materiality of any omission or misrepresentation are likely to be common issues, Plaintiffs have not satisfied their burden to demonstrate that those issues predominate over the knowledge issue – an issue that must be determined on an individualized basis as to each investor. *See In Re IPO*, 471 F.3d at 43-44. This is particularly true where, as here, Plaintiffs allege misrepresentations and omissions in the Registration Statement concerning facts about which there appears to have been widespread

knowledge from multiple public and private sources that "would precipitate individual inquiries as to the knowledge of each member of the class." *See id.* at 44.

Relevant information was available to potential investors before the Registration Statement became effective. For instance, Torch's bankruptcy was a matter of public record. Regarding plans to transform the company to focus on international and deepwater markets, Superior's CEO Jim Mermis provided information to potential investors at an April 2007 "IPO Roadshow" regarding Superior's plans to expand into deepwater operations. For example, in May 2007, an analyst wrote that Superior was pursuing a deepwater growth program. The next month, a different analyst stated that a "disproportionate amount" of Superior's corporate spending was directed toward international and deepwater projects. In August 2007, Superior disclosed again that it was "transforming" itself into a company providing international and deepwater services.

Regarding the declining business in the Gulf of Mexico, particularly hurricane-related business, the company disclosed in a May 2007 press release that 75% of its future revenue would be derived from hurricane-related projects. In June 2007, an analyst disclosed that revenue from hurricane-related repairs was trending downward. As more information became available during the proposed class period, it became more likely that an individual purchaser of Superior's IPO shares had knowledge that

would support the affirmative defense asserted by Defendants. Although some information may not have been disclosed during the proposed class period, significant disclosures occurred during the relevant period such that the issue of knowledge permeates the case.

Each investor's knowledge is an individual issue over which no common issues of law and fact predominate. As a result, Plaintiffs have failed to establish the predominance requirement of Rule 23(b)(3).[3]

### III. CONCLUSION AND ORDER

Plaintiffs have failed to satisfy their burden to establish that common questions of law or fact predominate over questions affecting only individual members as required for class certification under Rule 23(b)(3). As a result, it is hereby

**ORDERED** that the Motion for Class Certification [Doc. # 172] is **DENIED**. It is further

**ORDERED** that Plaintiffs' Motion to Strike [Doc. # 191] is **DENIED**. It is further

---

[3] Because Plaintiffs have not satisfied the predominance requirement, the Court need not address the superiority requirement. Nonetheless, the Court notes that the presence of significant individual issues relating to each Plaintiff's knowledge "detracts from the superiority of the class action device in resolving these claims." *See Steering Comm.*, 461 F.3d at 604-05.

**ORDERED** that counsel shall appear in person before the Court on **June 29, 2010, at 10:00 a.m.** for a status conference regarding the individual member cases.

SIGNED at Houston, Texas, this **8th** day of **June, 2010.**

_____
Nancy F. Atlas
United States District Judge