**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **In Re SUPERIOR OFFSHORE** | ) | **CIVIL ACTION NO. 08-cv-** |
| **INTERNATIONAL, INC. SECURITIES** | ) | **00687** |
| **LITIGATION** | ) | |
| | ) | |
| | ) | **JUDGE NANCY F. ATLAS** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**LEAD PLAINTIFF'S MOTION FOR IMPOSITION OF**
**BOND FOR COSTS ON APPEAL AND BRIEF IN SUPPORT**

# Table of Contents

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT........................................................................................................................ 2

    A.    Pursuant to F.R.A.P. 7, the Court Should Impose an Appeal Bond for Costs
        on Appeal in an Amount Not Less Than $25,000............................................................ 2

    B.    Gordon's Appeal is Frivolous and a Bond Which Reflects This Court's
        Determination of the Likely Outcome of the Appeal Should be Imposed....................... 4

    C.    The Significant Burden Imposed on the Class by Appellant Gordon.............................. 10

III.  CONCLUSION ................................................................................................................... 11

## Table of Authorities

**Cases**

*Adsani v. Miller,* 139 F.3d 67 (2d Cir. #1998)........................................................................ 2, 4, 5,

*Allapattah Servs., Inc. v. Exxon Corp.,* No. 91-0986-CIV, 2006 WL 1132371
   (S.D. Fla. Apr.7, 2006) ................................................................................................... 10

*Baker v. Urban Outfitters, Inc.*, No. 01 CV 5440, 2006 WL 3635392
   (S.D.N.Y. Dec. 12, 2006) .. .............................................................................................. 1

*Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300 (S.D.N.Y. 2009) ........................... 1

*Bowling v. Pfizer*, Inc., 143 F.R.D. 141 (S.D. Ohio 1992) ................................................... 6

*Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030 (5th Cir. 1990)................................................ 5

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ...................................................... 10

*In re Bisys Sec. Litig.,* Case No. 04 Civ. 3840, 2007 U.S. Dist. LEXIS 51087
   (S.D.N.Y. July 16, 2007) ............................................................................................... 10

*In re Cardizem CD Antitrust Litig.,* 391 F.3d 812 (6th Cir.2004) ................................................ 10

*In re Currency Conversion Fee Antitrust Litig.*, No. M-2195, 2010 WL 1253741
   (S.D.N.Y. Mar. 5, 2010) .................................................................................................. 1

*In re Dell, Inc.*, No. 06-726, 2010 WL 2371834 (W.D. Tex. June 11, 2010)............................. 6, 7

*In re Heritage Bond Litig.,* No. MDL 02-ML-1475 DT, 2005 WL 2401111
   (C.D. Cal. Sept.12, 2005)................................................................................................. 10

*In re Initial Public Offering Sec. Litig.*, 728 F.Supp.2d 289 (S.D.N.Y. 2010) ........................... 1, 3

*In re Insurance Brokerage Antitrust Litig.*, No. 04-5184, 2007 WL 1963063
   (D.N.J. July 2, 2007)....................................................................................................... 1, 4

*In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2009 WL 5120818
   (E.D. La. Mar. 2, 2009).................................................................................................... 7

*Klein v. O'Neal, Inc.,* 2010 WL 1435161 (N.D.Tex. April 9, 2010) ........................................... 7

*Longden v.  Lunderman,* 979 F.2d 1095 (5th Cir. 1992) ................................................... 7

*Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942 (E.D. Tex. 2000) ................................. 7

*Singleton v. Wulff,* 428 U.S. 106, (1976) ...................................................................................... 5

*Spiller v. Ella Smithers Geriatric Ctr.,* 919 F.2d 339 (5th Cir.1990) ........................................... 4

*Stewart v. Courtyard Mgmt. Corp.*, 155 Fed.Appx. 756 (5th Cir. 2005)..................................... 4

*Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295 (5th Cir. 2007) .............................. 2, 10

**Other Authorities**

Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623 (2009) ................. 9

*The Practitioner's Guide to the U.S. Court of Appeals for the Fifth Circuit* ............................... 11

**Rules**

5th Cir. R. 31.1 ............................................................................................................................. 3

5th Cir. R. 39.1 ............................................................................................................................. 3

Fed.R. App. P. 4 ............................................................................................................................ 9

Fed.R. App. P. 7 ............................................................................................................................ 2

Fed R. App. P. 38 ........................................................................................................................ 12

Fed.R. App. P. 39 ....................................................................................................................... 3,4

Fed. R. Civ. P. 11 ........................................................................................................................ 8

Lead Plaintiff Charles Ognar, by and through Lead Counsel, respectfully moves the Court for an order requiring Appellant Don Gordon ("Gordon") to file a bond or provide other security in an amount that this Court deems fit pursuant to Rule 7 of the Federal Rules of Appellate Procedure ("F.R.A.P."). In light of the facts and circumstances present here, discussed in detail below, Lead Plaintiff respectfully requests an appeal bond in an amount not less than $25,000.00.[1]

## I. INTRODUCTION

On April 20, 2011, Gordon filed an objection (Doc. # 211) to the Motion for Final Approval of Settlement and Plan of Allocation, Award of Attorney's Fees, Lead Plaintiff Award, and Reimbursement of Expenses.  Doc. # 208. Gordon's objection was frivolous and riddled with gross factual errors and distortions of the record.[2] On May 3, 2011, Defendants and Lead Plaintiff filed separate responses to Gordon's objection.  Lead Plaintiff's response addressed in detail the reasons the objection should be rejected. Doc #s 214, 215.  Defendants' response was equally vigorous.

On May 24, 2011, this Court held a fairness hearing to consider the Motion for Final Approval of Settlement and Plan of Allocation, Award of Attorney's Fees, Lead

---

[1] Courts have determined that bond amounts of $25,000-$50,000 are reasonable in similar circumstances. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, No. M-2195, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) ($50,000); *Berry v. Deutsche Bank Trust Co. Am.*, 632 F. Supp. 2d 300, 308 (S.D.N.Y. 2009) ($50,000); *Baker v. Urban Outfitters, Inc.*, No. 01 CV 5440, 2006 WL 3635392, at *2 (S.D.N.Y. Dec. 12, 2006) ($50,000); *see also Initial Pub. Offering*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010) ($25,000); *In re Ins. Brokerage Antitrust Litigation*, No. 04-5184, 2007 WL 1963063 at *3 (D.N.J. July 2, 2007) ("Accordingly, this Court concludes that a $25,000 bond is reasonable…").

[2] Although Gordon indicated that he would appear through counsel at the settlement fairness hearing, neither Gordon nor his attorney attended. *See* Gordon Notice of Objection. Doc. # 211.

1

Plaintiff Award, and Reimbursement of Expenses. This Court, *inter alia*: (i) carefully addressed Gordon's objection and rejected it; (ii) approved the $1.9M cash settlement and the plan of allocation as fair, reasonable and adequate; and (iii) approved the requested award of attorney's fees and expenses and the Lead Plaintiff award.

Thereafter, on June 23, 2011, Gordon filed a Notice of Appeal and Amended Notice of Appeal (Docs. # 221-222) of the Final Judgment and Order of Dismissal with Prejudice entered by this Court on May 25, 2011. Gordon's appeal is meritless at best, will result in the unjust delay in the distribution of the settlement proceeds to the Class, and appears to be nothing more than an unfortunate attempt to leverage compensation for Gordon and/or his counsel. *See Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295, 300 (5th Cir. 2007).

For the reasons more fully set forth below, pursuant to F.R.A.P. 7, Lead Plaintiff respectfully requests that this Court impose a bond for costs on appeal in an amount not less than $25,000.00.

## II. ARGUMENT

### A. Pursuant to F.R.A.P. 7, the Court Should Impose an Appeal Bond for Costs on Appeal in an Amount Not Less Than $25,000

"In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." F.R.A.P. 7. The purpose of this rule is to protect the appellee from the risk of nonpayment by the appellant, if appellee wins the appeal. *See Adsani v. Miller,* 139 F.3d 67, 75 (2d Cir.1998). Fixing the amount of a bond may include taxable costs enumerated

2

in F.R.A.P. Rule 39(e), such as photocopying, printing, binding, filing, and service as well as the cost of the preparation and transmission of the record. *In re Initial Public Offering Sec. Litig.*, 728 F.Supp.2d 289, 292 (S.D.N.Y. 2010).

An appeal here will likely involve significant costs, including photocopying, binding, filing, service, and compilation of a substantial appellate record. Fifth Circuit Rule 39.1 provides that the taxable copying costs shall be the actual cost or $0.15, whichever is less; however, the cost of binding shall not be limited to the foregoing rate.

In his rejected objection, Mr. Gordon raised issues about the adequacy of the settlement, the fees and expenses and the work done by Lead Counsel, the procedural posture of the case, and the basis of this Court's denial of class certification. Indeed, Gordon explicitly claims in his objection that a "[c]areful review of the docket in this case demonstrates counsel did not spend too much time litigating the case." Doc # 211 at 4.

In reality, approximately 1.5 million pages of documents were produced in this matter by defendants and third parties and analyzed by Lead Counsel. Further, some 26 depositions were taken, resulting in transcripts exceeding 1,800 pages.[3]  Because Gordon's objection has challenged the very fact that Lead Counsel did any meaningful work in this case, these materials are directly relevant to the appeal and some portion thereof may be included in the record on appeal.  Other documents that relate to the

---

[3] Many of the documents produced in this case are subject to a confidentiality agreement signed by the parties. Lead Plaintiff anticipates that portions of the record may need to be filed under seal, and Mr. Gordon and his counsel may need to become signatories to the parties' confidentiality agreement to obtain access.

issues contained in Gordon's objection and therefore may become part of the record include, *inter alia*, the operative complaint, relevant motions (including but not limited to the motion to dismiss briefing, the class certification briefing and related expert declarations, motions for preliminary and final approval of the settlement, plan of allocation, fee and expenses and related exhibits for all motions), and orders of this Court.  These relevant documents exceed 1,600 pages.

Accordingly, in light of the nature of the issues raised in Gordon's rejected objection, copying costs alone may be significant. As such, Lead Plaintiff requests that the Court order Gordon to post a bond in an amount not less than $25,000.00, and this arrangement will "adequately secure recovery of costs should the class prevail but will not work a financial hardship on the exercise of the Objectors' rights to appeal." *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1963063 at *5 (citations omitted).

The appeal bond is further warranted, as discussed in more detail below, by the fact that this Court has discretion to take into account the merits of Gordon's appeal and impose a bond based upon its determination of the likely outcome of this appeal. *See Adsani,* 139 F.3d at 79. Here, the outcome is obvious.

### B. Gordon's Appeal is Frivolous and a Bond Which Reflects This Court's Determination of the Likely Outcome of the Appeal Should be Imposed

Gordon's appeal is frivolous and will result in an unjust and senseless delay in the distribution of the settlement to the Class. An appeal is frivolous "if the result is obvious or the arguments of error are wholly without merit." *Stewart v. Courtyard Mgmt. Corp.*, 155 Fed.Appx. 756 (5th Cir. 2005) (citing *Spiller v. Ella Smithers Geriatric Ctr.,* 919 F.2d

339, 348 (5th Cir.1990), quoting *Coane v. Ferrara Pan Candy Co.,* 898 F.2d 1030, 1034 (5th Cir. 1990)). Moreover, "[a] district court, familiar with the contours of the case appealed, has the discretion to impose a bond which reflects its determination of the likely outcome of the appeal." *Adsani,* 139 F.3d at 79.

Gordon objected to the settlement for several reasons and is limited to these issues on appeal: (1) the settlement figure was "too low;" (2) the attorney's fees of 8% of the settlement (*less than 5% of Lead Counsel's actual lodestar of approximately $2.8 million*) were excessive; (3) costs obtained by Lead Counsel were not reasonable even though they were materially lower than the actual costs covered by Lead Counsel in the course of the litigation (prior to this appeal, actual costs covered by Lead Counsel exceeded the expense request by more than approximately $13,750); and (4) the "quick pay" provision (which does not exist) should have been denied. Doc. # 211 at 2-6.

Gordon's objection was wholly without merit and, as it is appropriate for this Court to make a determination of the likely outcome of Gordon's appeal when setting an appeal bond, Lead Plaintiff will briefly address the merits of Gordon's appeal, based on the issues raised in his rejected objection. *Adsani,* 139 F.3d at 79.[4]  Of course, to the extent that Gordon seeks to raise any issues outside his rejected objection, any such issues were waived by failure to address them before the District Court. *See Singleton v. Wulff,* 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

---

[4] Lead Plaintiff also incorporates herein by reference his Motion and Memo for Approval of Settlement and his response to Gordon's objection. Docs. # 208,209, 214.

First, Gordon's objection that the settlement amount is "neither fair, adequate and [sic] reasonable" is baseless. An objection that the settlement amount is "too low does not take into account the procedural posture of the case and the steep and perilous path Plaintiffs would have had to climb (even in the event of a reversal) to get any recovery." *In re Dell, Inc.*, No. 06-726, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010); *see also Bowling v. Pfizer*, Inc., 143 F.R.D. 141, 169 (S.D. Ohio 1992) (rejecting the argument that settlement did not fully cover certain costs and noting that settlement is "not a wish-list of class members that the Defendant must fulfill."). Here, given the procedural posture of the case, including the fact that class certification had been denied and the case had been ongoing for over three years, the Court's order finding the $1.9 million cash settlement to be fair, adequate, and reasonable will be affirmed on appeal.

Next, Gordon's rejected objection argues that the Court should limit Lead Plaintiff's attorney fees to $75,000 because the percentage of fund method is prohibited in the Fifth Circuit and "enhancement of a lodestar fee award… is 'flatly forbidden.'" Doc. # 211 at 3-5. This is not only untrue as a matter of law, but a factually bizarre argument, given that Lead Counsel sought and received an award of just .05 of its actual lodestar in this case – a far cry from any "enhancement" of lodestar.

The Supreme Court and many courts in the Fifth Circuit have applied the percentage method. *See* Memorandum of Law for Final Approval of Settlement and Plan of Allocation, Award of Attorney's Fees, Lead Plaintiff Award, and Reimbursement of Expenses. Doc. #209 at 29-32. The Fifth Circuit has never expressly embraced or rejected a percentage methodology. *Id. See also Longden v. Lunderman,* 979 F.2d 1095,

6

1100 n. 11 (5th Cir. 1992) (affirming district court's percentage fee award in securities class action noting that the district court stated its preference for the percentage of recovery approach "as a matter of policy"); *see also In re OCA, Inc. Sec. and Deriv. Litig.*, No. 05-2165, 2009 WL 512081, at *18 (E.D. La. Mar. 2, 2009) ("The Fifth Circuit has never explicitly disapproved of the percentage method of calculating fees in common fund cases."); *Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 967 n.15 (E.D. Tex. 2000) ("[T]he Fifth Circuit has never…reversed a district court judge's decision to award a fee as a percentage.").[5]

More importantly, as mentioned above, Gordon's objection on this point is incredible considering that Lead Counsel never sought any lodestar enhancement at all. To the contrary, Lead Counsel's requested fee of 8% of the settlement constituted only approximately *5% of their actual lodestar in this case*.

Finally, Gordon baselessly asserts that a "[c]areful review of the docket in this case demonstrates counsel did not spend too much time litigating the case." Doc. # 211 at 4. This calls into question whether Mr. King complied with his Rule 11 duty that his

---

[5] *See In re Dell Inc*., 2010 WL 2371834 at *12: "'The vast majority of Courts of Appeals have approved or mandated the use of the percentage method' in common fund cases, and the method has been specifically approved by the Supreme Court. *In re OCA, Inc. Secs. & Deriv. Litig.,* 2009 WL 512081 at *17 (E.D. La. 2009)). In fact, the Manual for Complex Litigation identifies the Fifth Circuit as the ***only*** circuit that has yet to explicitly adopt the percentage method in common fund cases. *Klein v. O'Neal, Inc.,* 2010 WL 1435161 at *34 (N.D. Tex. April 9, 2010) (citing *Manual for Complex Litigation (Fourth)* § 14.121 (2010)). Numerous district courts in this circuit have used the percentage method in common fund cases, generally concluding 'though the Fifth Circuit has not explicitly accepted the percentage method, it does appear to be amenable to its use, so long as the *Johnson* framework is utilized to ensure that the fee awarded is reasonable.' *See, e.g., Turner v. Murphy Oil USA, Inc.,* 472 F.Supp.2d 830, 843 (E.D. La. 2007) (citations omitted)."

factual contentions have evidentiary support. *See* Rule 11 of the Federal Rules of Civil Procedure. Here, Lead Plaintiff's counsel, *inter alia*, exchanged hundreds of requests for production, reviewed and analyzed approximately 1.5 million documents, and took and/or defended approximately 26 depositions totaling thousands of hours of work on this litigation.[6] Therefore, as Gordon's objection lacks any evidentiary support and is woefully inadequate, it will be unsuccessful on appeal.  This Court also noted at the hearing that a review of the docket would not contain this type of information.

Thirdly, Gordon objected to the reimbursement of expenses to Lead Plaintiff's counsel. Here, Counsel's actual expenses in this litigation were over $700,000, exceeding the requested reimbursement of $698,500. As Lead Plaintiff's Memorandum of Law for Final Approval (Doc. # 209 at 45-50) detailed and this Court confirmed in its Final Judgment, the expenses incurred by Lead Plaintiff's counsel were reasonable, of the type typically billed by attorneys to paying clients in the marketplace, and were incurred in the course of litigating to an ultimately successful resolution–settlement–of this matter. Thus, this issue will also be unsuccessful on appeal.

Finally, Gordon states that a nonexistent "quick pay" provision must be denied. Doc. # 211 at 6. Even a cursory review of the proposed judgment submitted with Lead Plaintiff's preliminary and final approval papers reveals no "quick pay" provision exists here. Indeed, the proposed order for final approval (Doc. # 210) and the Final Judgment (Doc. # 220) provide that fees and expenses will be paid "not less than 35 days after the

---

[6] Lead Counsel's lodestar in this case (prior to the notice of appeal) was approximately $2,788,165.50.  Doc. # 209, Attachment 1 at 28.

entry of this order."[7] The Stipulation of Settlement (Doc. # 202 Exch. 1) defined the "Final Order" as "an order as to which there is no pending appeal, stay, motion for reconsideration or motion to vacate or similar request for relief, and as to which the period of time for a Party to appeal or petition for a writ of certiorari has expired."

Ironically, "quick pay" provisions are actually intended to reduce the leverage obtained by a frivolously objecting class member such as Gordon—a practice referred to as "objector blackmail."[8] *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev. 1623, 1624, 1641 (2009) ("The purpose of quick-pay provisions is to greatly reduce the leverage objecting class members have over class counsel by removing the ability of their appeals to delay the point at which class counsel receive fee awards.").

Nevertheless, in support of his rejected objection, Gordon wrongfully relies on *In re Bisys Sec. Litig.,* Case No. 04 Civ. 3840, 2007 U.S. Dist. LEXIS 51087 (S.D.N.Y. July 16, 2007), a case that makes no mention of misappropriation or quick pay provisions, for

---

[7]  F.R.A.P. Rule 4 provides that a notice of appeal "must be filed with district clerk within 30 days after the judgment or order appealed from is entered."

[8] "Objector blackmail is simply a specific application of the general concern with legal regimes that permit one or more individuals to 'hold out' and disrupt collective action. The holdout problem in class action litigation stems from the following series of events: When a class action is settled, class members who do not like the proposed settlement are permitted to file objections with the federal district court that must approve it. If the district court nonetheless approves the settlement, the class members who filed objections have the right to appeal the district court's approval. If objectors appeal the settlement, however, the final resolution of the settlement will be delayed during the time it takes the court of appeals to decide the appeal, which can be years. Not only does the appeal delay final resolution of the settlement, but, more importantly for the blackmail problem, it also delays the point at which class counsel can receive their fee awards, which are contingent upon the settlement. As class counsel are eager to receive these fees, they are willing to pay objectors out of their own pockets to drop the appeals. This, it is thought, has led class members to file wholly frivolous objections and appeals for no other reason than to induce these side payments from class counsel. These appeals are what courts and commentators refer to as objector 'blackmail.'" 62 V and. L. Rev. at 1624.

the proposition that if Lead Plaintiff's counsel obtains the settlement funds prior to an appeal and the matter is overturned, Lead Plaintiff's counsel might misappropriate the settlement funds. To even hint that Lead Counsel might misappropriate settlement funds if this matter is overturned on appeal is seriously reckless, wholly without merit, and borders on defamation. This issue will also be unsuccessful on appeal.

### C.   The Significant Burden Imposed on the Class by Appellant Gordon

In *Vaughn*, 507 F.3d at 300, the Fifth Circuit recognized the significant burden imposed when an objector appeals a proposed class settlement: "We recognize that there are competing, significant interests when an objector appeals a proposed class settlement. In some circumstances objectors may use an appeal as a means of leveraging compensation for themselves or their counsel. The detriment to class members can be substantial." Additionally, an appeal bond is not uncommon in these circumstances given the delay and costs which may be incurred by the class by an appeal. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007); *see also In re Heritage Bond Litig., No. MDL 02-ML-1475 DT, 2005 WL 2401111, at \*3 (C.D. Cal. Sept. 12, 2005) (recognizing "[f]ederal courts have required an appeal bond from appellants ... as a condition of maintaining objector appeals of class action settlements or attorneys' fee awards") (citing In re Cardizem CD Antitrust Litig.,* 391 F.3d 812, 814 (6th Cir. # 2004); *Allapattah Servs., Inc. v. Exxon Corp.,* No. 91-0986-CIV, 2006 WL 1132371, at \*18 (S.D. Fla. Apr.7, 2006) (imposing appeal bond on class member appealing settlement on behalf of entire class when impact of appeal would be "highly detrimental" as it would stay "both the entry of final judgment on all claims ... and payment to all Class

members"). Considering that Gordon's frivolous appeal will prevent payment to all Class members and is tantamount to a stay of the settlement, the impact of his appeal will be highly detrimental and burdensome to the class. Gordon's objection is rife with factual inaccuracies and fundamental errors of law, which leads Lead Plaintiff's counsel to conclude that Gordon and his attorney either suffer from a gross misunderstanding of applicable law or they seek to use this baseless appeal as a means to seek to extort a payoff from Counsel.[9] Either way, it is obvious that the judgment of this Court will be affirmed but the appeal will nevertheless result in an approximate eleven month delay in payments being made to the Class.  Therefore, as the costs associated with this appeal will likely be substantial, coupled with the obviousness of the result of Gordon's appeal, Lead Plaintiff respectfully requests that the Court impose an appeal bond in an amount not less than $25,000.00 or in an amount as this Court otherwise deems fit.[10]

### III.  CONCLUSION

For the foregoing reasons, Lead Plaintiff Charles Ognar respectfully requests that this Court impose a bond for costs on appeal in such an amount as the Court deems fit but, in any event, not less than $25,000.00.[11]

Dated: July 27, 2011                                 Respectfully submitted,

                                                            /s/ Kim E. Miller
                                                     Kim E. Miller, *pro hac vice*
                                                     KAHN SWICK & FOTI, LLC

---

[10] After the Fifth Circuit disposes of this appeal, Lead Plaintiff intends to file a separate motion in the Court of Appeals seeking damages pursuant to F.R.A.P. Rule 38.

[11] A Proposed Order is attached.  The appeal is captioned No. 11-20494, *Robert Brand v. Superior Offshore Intl, Inc., et al*.  See Exhibit 1 hereto.

500 5th Avenue, Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

Lewis Kahn, *pro hac vice*
KAHN SWICK & FOTI, LLC
206 Covington Street
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Lead Counsel for Lead Plaintiff*
*and the Class*

Art Sadin (Texas Bar No. 17508450)
THE SADIN FIRM
121 Magnolia, Suite 102
Friendswood, Texas 77546
Telephone: (281) 648-7711
Facsimile: (281) 648-7799
asadin@sadinlawfirm.com

*Liaison Counsel for Lead Plaintiff and the Class*

12

## CERTIFICATE OF CONFERENCE

As required by the Honorable Nancy F. Atlas' Court Procedures, I hereby certify that I have conferred, or made a serious and timely attempt to confer, with all other parties listed below about the merits of this motion with the following results:

Michael J. Biles, Esq. – supports motion
Tony L. Visage, Esq. - supports motion
Mark D. Manela, Esq. - supports motion
**Counsel for Defendants**

James W. King, Esq. – intends to oppose motion
**Counsel for Appellant Don Gordon**

/s/ Kim E. Miller
Kim E. Miller

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion and Brief in Support were filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent via U.S. Mail to those indicated as non-registered participants on July 27, 2011.

/s/ Kim E. Miller
Kim E. Miller

13